This case is number 08-1094 in Re Marisol. Mr. Hall, whenever you're ready. Good afternoon, Your Honors. In this case, the evidence of substantially different commercial impressions between the Don the Beachcomber label and the Beachcomber label preclude likelihood of confusion. Now, here's why. The Board did not consider these differences. And if the Court takes a look at Exhibit 1, which is at Appendix A-62-63, we see the great difference in these two labels. The Don the Beachcomber label conveys an image of a tropical, faraway location, which has the sun beating on water and the... This is not my field of expertise, so you need to help me a little bit on this. I thought that the issue was the phrase Don the Beachcomber and not the label on which it appeared. Am I mistaken? Yes, the issue does include the labels, Your Honor, because the statements of the witnesses include references to those labels. Well, that may be a problem with the statements of the witnesses. I thought the trademark issue before us was limited to the question of whether the trademark Don the Beachcomber was registrable in the light of an existing registration for Beachcomber. And I didn't think that there was a copyright problem involving different labels. If I'm wrong, please correct me. I just don't understand this area. Well, I would say so, Your Honor, because the labels form an important part of the differences between these two marks. But the application is not, as I recall, I'm coming through to find it, is not for the words plus design. Isn't it just for the words, Don the Beachcomber? That's true, Your Honor, but a specimen can have more than what is the type words. In the case... But would the registration, as a matter of trademark practice, be limited to the specimens? It's the words, isn't it, if the words are presented and the application is just for the words in block letters? It's not limited to any particular design, is it? No, you can have, where the application has a typed mark, the specimen can have more than that to present to the examiner. Well, that's true, but you're asking to register Don the Beachcomber, not the entire label. That's true. That's true. But if you're asking to register Don the Beachcomber as a mark, and it's similar to the Beachcomber, doesn't the Patent Office really have a basis for rejection? Because you're not asking for the palm trees, the sunsets, and otherwise. You're asking just for the words Don the Beachcomber. Well, that's true, Your Honor, but the question of likelihood of confusion definitely includes all the evidence that's relevant to that proposition. And we have presented the labels. For example, if you take this court's case that's decided in 2005 called Palm Bay versus Verve Clicquot. So in that case, this court, Judge Rader's opinion, held that the first word of Verve in the Verve Clicquot mark was prominent, and also the first word was Verve in the label. And based upon that, found likelihood of confusion. So we can certainly show this difference in the labels as part of determining whether or not there is a likelihood of confusion. Is it your argument, counsel, that if we had a 40-foot billboard up here, and the word Don occupied 90% of it, and then down in the little corner it said the Beachcomber, that that would be a proper illustration of the argument for registering Don the Beachcomber for flavored rums? Is that your argument? Well, that's part of it, Your Honor. The other part would be the way the trade dress is. Now, in the specialty brands case of this court, the court compared the relative labels of the applicant and that of the opposer. And in that case, the court considered in detail the background of those labels in determining whether or not there was a similar commercial impression to help the court decide whether or not there was likelihood of confusion. As I said, we are entitled to that same situation here, that the labels are important in determining that fact, whether or not there is confusion. But once again, Mr. Hall, you're not asking for the label to be trademarked. You're asking for the word to be trademarked. That's true. So if the word itself is confusingly similar to the registered mark, which the patent office uses for a reference to deny your registration, isn't it really the words that have to be compared, not the entire label that you have? Because you're not registering the label. Well, we don't have to register the label, Your Honor, because the words are in the label and we're trying to determine whether or not there is likelihood of confusion as an evidentiary matter. So it's not a question—we're not here for the determination of registerility per se on the words alone, but on the whole ensemble of how the marks are used in the marketplace. Look at A-64, counsel, in your appendix. Yes. Are we entitled to assume that if we authorize this registration, your use of the phrase, Don the beachcomber, would never be varied from this? That is, there's no possibility. Is it your argument that the word Don the beachcomber might be appearing on a label at another time with equal size for all three words? Are you saying that you're bound by this label? No, Your Honor. And this court in specialty brands discussed that situation and said this, that ordinarily for a word mark, we do not look to the trade dress, which may be changed at any time. But the trade dress may nevertheless provide evidence of whether the word mark projects a confusingly similar commercial impression. So I have to follow what this court has said in the specialty brands case. And therefore I say that the Don the beachcomber label is entitled to be considered with relation to the beachcomber label. Shall I assume there's a registration for Don the beachcomber for restaurant services? Yes. Yes, the restaurant. Now I take it that the court has looked at the various photos of the labels in question here, and it is no doubt evident that the differences are significant. The Don the beachcomber label of Exhibit 1 shows an exotic tropical setting and has the trees and the background and the reddish brown color, red color, which is strikingly different from what is shown in Exhibit 2, which is the beachcomber label. Should I assume that as an ordinary consumer of this product, which I drink my share of rum from time to time, should I assume that if I went into a bar and wanted a glass of your product, I would say please give me a glass of Don and tonic rather than a glass of beachcomber and tonic? Is that your assumption as to how it would work? Yes, that's right. I would say that most likely when you came in to that store or bar and asked for Don the beachcomber rum, you'd get Don the beachcomber rum. You would not get beachcomber rum because in the marketplace, the labels of the respective marks is so different in commercial impression and in meaning. But I couldn't just say a glass of Don, could I? Oh, you could. You could. There's no telling what you'd get. Actually, you could say anything, Your Honor. Yeah, I know I could say anything. Is there, maybe it's irrelevant, do you have a separate application for Don the beachcomber in design as a trademark? No, it's just the words, Your Honor. Now in that connection too, I think that we've established the differences between the two labels. It's back on the bottle too. If you look at exhibit A64, that light blue color is giving a completely different impression of the beachcomber product from the Don the beachcomber product, which is a clear glass bottle which shows the dark nature of the rum. Whereas the beachcomber is a fruity type and has this cool feeling. So you would not expect them to be found in the same location from the difference in the labels. But if in fact you're correct, Mr. Hall, in exhibit 2, at page A63, those labels don't depict a color blue. They just look to the beachcomber. It says coconut label and spice label, and those are blue. But then we're actually looking, though, at the bottles. I was referring to the bottle, Your Honor. I understand you're referring to the bottle, but that's not the restriction of the registered mark, beachcomber. It's not required to be applied to a blue bottle. Well, no. Nor is it required to show the various coconut and spice labels and pineapple and apple objects either. Not required. But this is what the marketplace shows, Your Honor, and that is the important part here, because the consumer coming into a liquor store or a bar will be considering the differences of what he sees and what she sees there. But could I be confused if I go into a package store and look at a beachcomber and a Don the Beachcomber bottle and maybe think it's the same source? The statements of these witnesses that are in the record indicate that they were not confused by looking at the bottles in the same way. There's a certain similarity in those statements, though, isn't there? That's all right, because in the disconnected Evarnish case of CCPA, this court's predecessor, that was allowed. Also, other cases like Omni and so forth have allowed the similarity of those statements. And so this court, of course, is bound by what CCPA has decided. So there's no problem in that respect. Let's hear from the trademark side and we'll save the rest of your time for rebuttal. Ms. Huber? May it please the Court, we're not here today to compare labels. You are, in fact, here today to make a registrability determination on the word marks. That is what is in the application. It's a standard character mark, which means it may be displayed in any format, including the exact format that the registered beachcomber mark is displayed in. And the marketplace realities are even more relevant here because this is an intent-to-use application. They haven't filed a statement of use. These labels, moreover, were created for the purposes of obtaining these customer statements. If I knew about a beachcomber mark and I had been refused registration, I, too, would be emphasizing the word DOM on my labels. The labels are completely irrelevant to this analysis. We have to focus back on the words and on the Board's decision and what you are here reviewing, which is the conclusion that DOM, a beachcomber for rum, is likely to be confused with beachcomber for flavored rum. What is the substantial evidence to support the Board's position, the Patent Office's position? The marks themselves and how the Board analyzed them. Here, the Board was very careful. It devoted 14 pages to analyzing the similarity of the marks. It considered all of Marisol's arguments in those 14 pages, including devoted seven pages to analyzing the statements. What the Board found is that DOM, the beachcomber, incorporates the entire arbitrary mark, beachcomber. Marisol doesn't dispute this. Beachcomber is arbitrary. It's thus deserving of a broader scope of protection. Marisol has an obligation to stay farther away from the arbitrary mark than it would a suggestive mark. Beachcomber also retains its same appearance. Pronunciation, meaning, and remains as a clear element in Marisol's mark. The Board said all of this. Marisol, again, doesn't dispute that. I've always wondered what kind of substantial evidence, that's just argument by the Board, isn't it, comparing the two marks? Well, it's fact-finding because when you're looking at the similarity of the marks, it is the marks themselves that you're comparing. It's a determination of the Board that they are similar. Correct. So is that a factual determination that they make, or is it a legal determination? It's a factual determination, and the ultimate question on likelihood of confusion is a legal determination. But on the factual question, the Board is limited to looking at the marks as they're presented to them in the application and the registration it issues. They can't go out and test-mark at the marks? No, they can't. Not when it's a registrability question. The Board also went on to find that Don nor Beachcomber are dominant. In doing so, the Board weighed, as this Court's precedent requires, all the elements of the mark, and they found that Don and Beachcomber are intrinsically related. Beachcomber identifies who Don is. Don means this particular Beachcomber. This is no different than the impression that Marisol alleges its mark conveys, which is that of Don, who happens to be a Beachcomber. It's all saying the same thing. So there's not even really an issue here as to what the overall impression this mark conveys is. Based on all of this, the Board concluded on the similarity of the marks, that Don the Beachcomber is likely to be viewed as simply a variation of the Beachcomber mark. Doesn't the Hearst case cut against your position? It doesn't, Your Honor, because in that case—well, several points on that case. In that case, what the Board had done was incorrectly diminish the significance of Girl. That's what this Court found. It looked at Girl and said it was descriptive. It didn't weigh it along with the Varga mark appropriately, and the Court determined that it inappropriately changed the mark. That's not what happened here. What Hearst specifically counsels is you must view the marks in their entireties, and you must weigh all of the components and give them appropriate weight. The Board followed Hearst here and did just that. Now, in Chatham, this Court held that the applicant there had made a similar argument to what Marisol is doing here, trying to say that Hearst controls the outcome in that case.  And this Court said, no, we're not—Hearst doesn't control the analysis here. It's fact-dependent. It's different marks. It's the analytical approach that's at issue, and the Board here followed the analytical approach that Hearst required it to conduct. I would also just like to point out two other points here, is that this case is not limited to a single factor. The Board made fact findings with respect to six dupont factors. One of them was similarity of the marks. There were five others, which Marisol does not challenge. That is, the goods are identical, the channels of trade are identical, the purchasers are identical, and the conditions of purchase are identical. Beachcomber is an arbitrary mark and thus deserves a broader scope of protection, and there aren't third-party uses of beachcomber for similar goods. When you have identical goods, a lesser degree of similarity is required. That's what Century 21 says. In the context of those legal standards, and given that beachcomber is arbitrary, the Board found that these marks are sufficiently similar to ground the likelihood of confusion. As I've already explained, the Board's finding on the similarity of the marks factor is supported by substantial evidence. And because all of the factors of likelihood of confusion weigh in favor of the conclusion that Don the beachcomber for rum is likely to be confused with the registered beachcomber mark for rum, the Board's decision should be affirmed. If the Court has any questions, I'm happy to answer them. Any more questions? No questions. OK. Thank you, Ms. Healy. Thank you. Mr. Hall, you have a little time. Thank you. The Board also said that beachcomber was not Don, and never did say what weights would be applicable to each of them specifically. We say that the case is similar to the Hearst case because, just like the Hearst case, the Board failed to give greater weight to Don. And the reason that we're saying that is that according to the first word rule, as shown in the Palm Bay case, cited in the PTO brief, this Court looked to the fact of what the first word was in the mark. That was verb. And also looked at what was the first word in the label. So, therefore, the label was certainly relevant to the issue of commercial impression, contrary to what my learned friend has said. Further, there was no substantial evidence to support the Board's decision. Beachcomber not being dominant, and the Board knew the description of Don the beachcomber as being a phrase. A phrase is defined as a sequence of words intended to have a meaning. Now, Don the beachcomber is a three-word mark. Beachcomber is singular. It cannot be a phrase. It cannot have the same meaning. Beachcomber is a word of general description. Don is specific. If a man was walking along the beach, and a policeman asked him, What's your name? And he said, Beachcomber. That would not identify that person at all. And so you would need Don to be better identifying who that person is. So the only basis that the Board gave for refusing to give greater weight to Don was that allegedly Beachcomber was an identifier of who Don was. Our presiding judge is Judge Newman, not Judge Pauline Newman. I know who she is, and so do you, just by reading the plaque in front of her. Isn't that sufficient? There must be a lot of Newmans, though, in the telephone book, Your Honor. And just the name Newman, although it's famous here, does not mean it's famous throughout the United States. You're mistaken about that. But I do think that comment helps your side better than the other side. I think we have the issues. Is there anything else that you need to tell us besides what's in the briefs? Yes, Your Honor. There are just a few words here that the statements that the Board criticized constitute evidence that shows what an actual consumer considers about the appearance, the sound, the meaning, and the commercial impression. And they found the differences would prevent any likelihood of confusion. The Board's opinion of the decision was really based on conjecture as to what the Board thought a hypothetical purchaser would look at the marks and would decide. That's not evidence. And the Board's statement as to similarities, again, is not a factual determination but a legal one, which this Court can review and decide contrary. For these reasons, we submit that the decision should be reversed and this application be sent to the PTO for publication. Okay. Thank you, Mr. Hall, and thank you, Ms. Heber. The case is taken into submission. All rise.